IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDAN SILVA,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  23-1784 |
| | : | |
| **CHERYL STEBERGER,** *et al.* | : | |
| Defendants. | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                       **August 7, 2023**

Jordan Silva, who is currently housed at Lancaster County Prison (LCP), filed a complaint on May 8, 2023 raising civil rights and state law negligence claims against Cheryl Steberger, the Warden of LCP, and an LCP John Doe Correctional Officer.  Mr. Silva also seeks leave to proceed *in forma pauperis*.  For the following reasons, the request to proceed *in forma pauperis* will be granted and the case dismissed without prejudice.

**I.**     **Factual Allegations**[1]

Mr. Silva relates facts concerning two separate incidents that occurred at LCP.  First, he alleges that on February 4, 2021, he was housed in a cell at LCP with a state inmate named Andrew Kauffman.  DI 2 at 4, 5.  Mr. Silva was awakened by Mr. Kauffman's attempt to rape him.  *Id*. at 5.  Mr. Kauffman, who had allegedly previously assaulted Mr. Silva, punched him in his sleep to knock him out so that he could have sex with him while he was unconscious.  *Id*.  Mr. Silva suffered head trauma and a rectal prolapse from the incident.  *Id*.  When he regained

---

[1] The facts set forth in this memorandum are taken from Mr. Silva's complaint (DI 2) and publicly available records.  We adopt the pagination assigned to the complaint by the CM/ECF docketing system.

consciousness, Mr. Silva alerted an unidentified correctional officer about the incident. *Id*. He was taken to a hospital for a rape kit. *Id*. at 8.

The second incident occurred on April 16, 2023. *Id*. at 4. On that date, Mr. Silva's cellmate Bryan Fines allegedly knocked him unconscious and put his penis in Mr. Silva's mouth. *Id*. at 12. As Mr. Silva regained consciousness, Mr. Fines struck him again and he again lost consciousness. He remembers that when he awoke, correctional officers were pulling the two men apart. *Id*. Mr. Silva told non-defendant Sergeant Crawley what happened to him. *Id*. Mr. Silva sustained head injuries and emotional trauma from the second incident. *Id*.

Mr. Silva was interviewed about the second incident on April 17, 2023. *Id*. at 16. During the interview he was allegedly accused of lying about the incident by two officials named Hacker and Sgt. Schrader. *Id*. Sgt. Schrader told him there was footage of the incident on body cameras. *Id*. When Mr. Silva stood and told Sgt. Schrader he wanted to leave the room where he was being questioned, Sgt. Schrader "pulled his Taser on" Mr. Silva, while giving him an order to sit back down. *Id*. Mr. Silva asserts he could not safely sit back down because his hands were cuffed behind his back. *Id*. Although he did not name him as a defendant, Mr. Silva claims that Sgt. Schrader committed assault and used excessive force and wants him fired from his job. *Id*. He alleges that another "investigator," presumably Hacker, threatened Mr. Silva with disciplinary action and charges for speaking up about the April incident. *Id*.

As a result of the second incident, Mr. Silva was given a misconduct that resulted in him being sent to disciplinary segregation for thirty days. *Id*. at 17. He asserts he was punished "for defending myself from the sexual assault." *Id*. He asserts he is also facing a misconduct charge for standing during the April 17, 2023 interview without permission. *Id*. He alleges that Hacker's supervisor, "Tony," is corrupt. *Id*. Alleging constitutional claims and state law

negligence claims, *id*. at 3, 4, Mr. Silva seeks money damages and an injunction requiring prison officials to place cameras in every cell at LCP, *id.* at 5, 13, 18.[2]

## II.     Standard of Review

We will grant Mr. Silva leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires we dismiss the complaint if it fails to state a claim.  We must determine whether the complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "'At this early stage of the litigation,' '[w]e accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (first, third, and fifth alterations in original) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Mr. Silva is proceeding pro se, we construe the allegations of the complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (internal quotation marks omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

---

[2] Mr. Silva attached as part of his complaint a "Victim Statement." *Id*. at 14-15.  He recounts the traumas he allegedly experienced in the past that led to drug use and suicide attempts, recites that he has witnessed "atrocities" and inhumane conditions at LCP, and asserts he suffers from posttraumatic stress disorder. *Id*. at 14.

[3] Because Mr. Silva is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

**III.     Analysis**

We understand Mr. Silva to be asserting constitutional claims and state law tort claims for money damages and injunctive relief.  The vehicle by which constitutional claims may be asserted in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (citation omitted) (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, [a] plaintiff . . . must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (first citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); then citing *Rode*, 845 F.2d at 1201 n.6).

In his complaint, Mr. Silva has named as defendants only Warden Steberger and a John Doe Correctional Officer.  Mr. Silva does not explain how Warden Steberger was personally involved in the incidents with his cellmates or the resulting use of force and misconduct involving the second incident.  He also does not explain the role of any unidentified correctional

4

officer in those events other than his allegation that he alerted an unidentified correctional officer about the first incident.

It is possible that Mr. Silva has named Warden Steberger because she is the Warden of LCP.  Liability under § 1983, however, cannot be predicated on a respondeat superior basis because the defendant merely holds a supervisory position.  *Id.* at 227; *Robinson v. Delbalso*, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (per curiam).  Moreover, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" a facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (alteration in original) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  To set forth a claim for supervisory liability under the "policy-and-practice" strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without

5

> the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*  A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *A.M. ex rel. J.M.K*, 372 F.3d at 586.

Because there is no allegation that Warden Steberger participated in the incident or established and maintained a policy, practice, or custom that deprived Mr. Silva of his constitutional rights, the claim against her is dismissed.  As stated, the claim against the John Doe defendant cannot proceed because Mr. Silva does not describe how any unidentified defendant was involved in the April 16, 2023 incident itself or the events of the following day, and the only allegation concerning the February 4, 2021 incident is that he merely he alerted an unidentified correctional officer about it.  This fails to allege a plausible constitutional claim.

**IV.   Conclusion**

For the foregoing reasons, we dismiss Mr. Silva's complaint without prejudice.  Mr. Silva will be granted an opportunity to file an amended complaint if he is capable of asserting facts

indicating that Warden Steberger or other individuals violated his constitutional rights with regard to the incidents he describes.[4]

---

[4] Because we dismiss Mr. Silva's federal claims, we will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (alteration in original) (footnote omitted) (first quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); then quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship.  *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020) (citing *Pierro*, 386 F. App'x at 309).

Mr. Silva does not allege the citizenship of the parties.  Rather, he provides only Pennsylvania addresses for the defendants, which suggests that he and some, if not all, of the defendants may be Pennsylvania citizens.  Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing our jurisdiction over any state law claims he intends to pursue concerning the incidents he describes.  However, Mr. Silva may reassert his state law claim in an amended complaint if he realleges a basis for a constitutional claim.  Otherwise, he may assert state law claims in an appropriate state court.

7