IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDAN ORLANDO SILVA,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 23-1784 |
| | : | |
| **CHERYL STEBERGER**, *et al.* | : | |
| Defendants. | : | |

# MEMORANDUM

**MURPHY, J.**                                                                                   September 12, 2023

## I.   Introduction

In a prior memorandum filed on August 7, 2023 (DI 6), we granted Plaintiff Jordan Orlando Silva leave to proceed *in forma pauperis* and dismissed his complaint without prejudice.[1] *See Silva v. Steberger*, No. 23-1184, 2023 WL 5017967 (E.D. Pa. Aug. 7, 2023). Mr. Silva, who at the time was housed at Lancaster County Prison (LCP),[2] raised civil rights and state law negligence claims against Cheryl Steberger, the Warden of LCP, and an LCP John Doe Correctional Officer.  Although his claims were dismissed because they were not plausibly pled, Mr. Silva was granted leave to file an amended complaint if he was capable of curing the defects the Court identified in his original complaint.  Mr. Silva has now filed an amended complaint, *see* DI 9, in which he names as defendants Warden Steberger, Sergeant Crawley, Correctional Officers Kile and Billow (collectively "the LCP Defendants"), and two LCP inmates, Andrew

---

[1] In his complaint, Mr. Silva referred to himself as "Jordan Silva," but in his amended complaint, he refers to himself as "Jordan Orlando Silva."  The Clerk of Court will be directed to update his name on the docket.

[2] Mr. Silva submitted a change of address on September 5, 2023, indicating he is no longer in custody.  *See* DI 8.

Kauffman III, and Brian Fines.  For the following reasons, we will dismiss certain claims in the amended complaint and direct service of the remaining claims on the defendants.

## II.    Factual Allegations[3]

Mr. Silva asserts constitutional claims and state law negligence claims based on three separate incidents that occurred at LCP.  First, he alleges that on February 4, 2021, he was housed in a cell at LCP with defendant Kauffman.  DI 9 at 13.  He was placed in the cell by Sergeant Crawley, who allegedly knew that inmate Mr. Kauffman posed a danger to Mr. Silva, that Mr. Silva had no felony convictions, that he had not spent time "upstate," and is much smaller in size.  *Id.*  During the night, Mr. Kauffman punched Mr. Silva in the head while he slept rendering him unconscious.  *Id.*  Mr. Silva awoke as he was being anally raped by Mr. Kauffman.  *Id.*  Mr. Kauffman again struck Mr. Silva on the head, again rendering him unconscious.  *Id.*

When the attack was over and he regained consciousness, Mr. Silva called for the on-duty correctional officer and told him he was suicidal to get himself out of the cell with Mr. Kauffman.  *Id.*  When out, he told the correctional officer what had occurred.  *Id.*  Mr. Kauffman was later "dragged by C.O.s kicking and screaming to RHU," while Mr. Silva was taken to the hospital for a rape kit.  *Id.* at 14.  Mr. Silva alleges that Sergeant Crawley acted maliciously and callously when he put Mr. Silva in the cell with Mr. Kauffman.  *Id.*  He alleges that Warden Steberger failed to protect him "by not having proper security measures such as cameras in cells to assure safety or rules to separate more dangerous inmates from less serious offenders."  *Id.*  He also asserts that Warden Steberger fails to train her staff and supervise her staff closely

---

[3] The facts set forth in this memorandum are taken from Mr. Silva's amended complaint (DI 9).  We adopt the pagination assigned by the CM/ECF docketing system.

enough thereby allowing them to engage in "poor behavior which is callous indifference." *Id.* at 16.

The second incident happened on April 16, 2023, when Mr. Silva was housed in a cell with defendant Fines.  Mr. Silva alleges he was asleep when he was punched, attacked, and rendered unconscious by inmate Fines, who penetrated Mr. Silva's mouth with his penis.  *Id.* at 15.  When Mr. Silva tried to move, Mr. Fines hit him again.  *Id*.  When Mr. Silva woke, he allegedly suffered a post traumatic response from the previous incident with Mr. Kauffman, and "lashed out at Fines" who called for a C.O.  *Id*.  The two were separated, and Mr. Silva was taken to the hospital for a rape kit.  *Id*.  Apparently the rape kit failed to detect evidence due to the constant flow of saliva through the mouth.  *Id*.  Mr. Silva alleges that Mr. Fines raped and battered him, and that Warden Steberger failed to protect him for the same reasons stated above.  *Id.*

The third incident happened on August 7, 2023 when defendant C/O Kile entered Mr. Silva's "camera cell and pressed a taser or some weapon against [his] chest." *Id.* at 16.  Mr. Silva asserts he was already unconscious due to "some form of physical hit to my neck or head." *Id*.  Defendant C/O Billow "allowed the attack and probably opened the [cell] door." *Id*.  They both verbally berated Mr. Silva, calling him stupid and poor. *Id*.  Mr. Silva asserts that defendant C/O Billow "acted with callous indifference," and defendant C/O Kile "abused his power and force." *Id*.  Mr. Silva speculates that defendant C/O Kile "did some sexually offensive thing" while he was unconscious.  *Id*.  He suffered an injury to his chest that led to heart pain and palpitations, and alleges that defendant C/O Kile committed a battery, breached security, and subjected him to cruel and unusual punishment — while defendant C/O Billow acted with callous indifference and stood by while defendant C/O Kile acted.  *Id*.  He makes the same

allegation with regard to Warden Steberger's involvement.  *Id*.  Mr. Silva seeks money damages from all defendants on each of his claims and to have defendant C/O Billow and defendant C/O Kile fired from their jobs and prevented from working in prisons.  *Id.* at 18-20.

### III.   Standard of Review

Because we granted Mr. Silva leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires that we dismiss Mr. Silva's amended complaint if he fails to state a claim.  We must determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[we will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (third and fifth alterations in original) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Mr. Silva is proceeding pro se, we construe the allegations of the amended complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala v. Crown Bay Maria*, 704 F.3d 239, 245 (3d Cir. 2013)).

### IV.   Analysis

We again understand Mr. Silva to be asserting constitutional claims and state law tort claims for money damages and injunctive relief.  The vehicle by which constitutional claims may be asserted in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims for Injunctive Relief

Mr. Silva seeks for relief on his claims that defendants Billow and Kile be fired from their jobs and prevented from working in prisons. We are not empowered to grant such relief as a remedy under § 1983. *Buskirk v. Pa. Bd. of Prob. & Parole*, 2022 WL 4542094, at *2 n.4 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee"); *see also id.* (alteration in original) (quoting *Teal v. Moody*, 2019 WL 6702405, at *1 (M.D. Fla. July 10, 2019) ("[T]o the extent Teal suggests that this Court reprimand the Defendants and/or terminate their employment, this Court does not have the authority to reprimand state employees and/or terminate their employment."); *Theriot v. Woods*, 2010 WL 623684, at *4-5 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]"); *see also Joseph v. Dep't of Corr.*, 2022 WL 4001116, at *6 (D. Alaska Aug. 9, 2022) (holding that, "[m]oreover, it is not apparent that the injunctive relief sought — the firing of [d]efendants from their positions within DOC — is an available remedy" in a § 1983 claim, and noting that "the Supreme Court has continuously cautioned federal courts from assuming 'a greater role in decisions affecting prison administration'" (quoting *Shaw v. Murphy*, 532 U.S. 223, 230 (2001))), *report and recommendation adopted*, 2022 WL 3996357 (D. Alaska Sept. 1, 2022). Accordingly, the claims for injunctive relief will be dismissed with prejudice.

### B. Constitutional Claims Against Inmates

Mr. Silva alleges that defendants Kauffman and Fines each committed sexual battery against him and he may also be attempting to assert constitutional claims against them based on the sexual assaults. *See* DI 9 at 19 (asserting that "a claim of sexual abuse may meet both the subjective and objective parts of the Eighth Amendment because sexual abuse can cause severe physical and mental harm," and citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). While it is not clear whether Mr. Silva intended by this statement to assert constitutional claims against defendants Kauffman and Fines, those claims are not plausible and will be dismissed with prejudice because Mr. Silva's fellow inmates are not "state actors" under § 1983. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (per curiam) ("Simonton cannot recover against Inmate Seaman under § 1983.") *see id.* (citing *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010)) (internal quotation marks omitted) ("To prevail on a § 1983 claim, a plaintiff must allege that the defendant acted under color of state law, in other words, that there was state action.").

### V. Conclusion

For the foregoing reasons, the Court will dismiss Mr. Silva's claim for injunctive relief seeking the termination of employment of defendants Billow and Kile, as well as any constitutional claims against defendants Kauffman and Fines. The balance of the claims will be served upon the defendants.